Clarence R. O'Brion and Olga M. O'Brion, Husband and Wife v. Commissioner.
Clarence R. O'Brion v. Commissioner
Docket No. 24050.
United States Tax Court
1951 Tax Ct. Memo LEXIS 26; 10 T.C.M. (CCH) 1122; T.C.M. (RIA) 51373; November 30, 1951
*26 Held, a certain distribution by a corporation was not made at such time and in such manner as to be essentially equivalent to a taxable dividend. Robert Ash, Esq., Munsey Bldg., Washington, D. C., and Carl F. Bauersfeld, Esq., for the petitioners. Joseph Landis, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's income tax for 1945 in the amount of $5,381.15. The sole issue in the present proceeding is whether the purchase and cancellation of its stock by a corporation was essentially equivalent to the distribution of a taxable dividend or whether the cancellation and distribution was a partial liquidation of the corporation. Findings of Fact The facts stipulated are so found. Clarence R. O'Brion and Olga M. O'Brion, the petitioners, are husband and wife who filed their 1945 joint income tax return with the collector of internal revenue for the district of Maine. In April, 1933, Clarence R. O'Brion organized the Eastern Tractor & Equipment Company (hereinafter sometimes referred to as Eastern Tractor), which became a distributor of Caterpillar Tractor Company products *27 in Maine, with headquarters in Portland. The Company sold heavy earth-moving equipment to logging and paper companies, road and dam builders, and municipalities. During the early years of the corporation's existence, its earning record was not outstanding. Between 1933 and 1944 the Company paid cash dividends amounting to $2,500 and $2,100 in 1936 and 1941, respectively. The authorized capital stock of the corporation was $50,000 common and $25,000 preferred. Prior to September 15, 1944, the issued and outstanding shares were held as follows: Clinton T. Goudy
1 share
Olga M. O'Brion
100 shares
Clarence R. O'Brion
249 shares
At a special meeting of the directors of the corporation held on September 6, 1944, the issued shares of common stock were increased from 350 to 500 shares by the declaration of a common stock dividend of 150 shares of $100 par value. After September 15, 1944, the outstanding shares were held as follows: Clinton T. Goudy
1 share
Olga M. O'Brion
144 shares
Clarence R. O'Brion
355 shares C. T. Goudy held his one share for the benefit of Clarence R. O'Brion. The stock dividend of $15,000 was charged to the surplus account *28 on the books of the corporation. Late in October of 1944 an officer of the Caterpillar Tractor Campany notified Clarence O'Brion that Capterpillar was considering cancellation of the distributorship because of his illness and age. O'Brion then entered into an agreement to act as distributor for Allis-Chalmers Manufacturing Company products of a similar type after the Caterpillar account was cancelled. The agreement with Caterpillar was terminated in May, 1945. Allis-Chalmers did not have a distributor in this territory and relatively few of their machines had been sold in the area. When Eastern Tractor became an Allis-Chalmers distributor it was not required to carry a large inventory of parts because of the lack of machines to be serviced. The purchase of machinery was financed by the supplier or through bank arrangements. Parts were financed by cash. Financing the parts account, together with accounts receivable, were the main uses of capital in the business. Total inventories as of December 31, 1944, were $36,822.32. A year later inventories totaled $37,973.10. Inventory of parts at the close of 1944 was carried at $30,422.47, and a year afterwards parts aggregated $18,545.83. *29 Caterpillar purchaed all new and unused parts from Eastern Tractor at the time that it cancelled its distributorship. In December, 1944, Clarence O'Brion met Robert A. Linberg with whom he made an arrangement for selling the business. On March 1, 1945, Linberg became vice president and general manager of Eastern Tractor, a verbal agreement having been reached on the sale of the corporation. On June 29, 1945, Eastern Tractor was authorized and directed by vote of the stockholders to purchase 80 shares of stock from Clarence O'Brion for $14,000. Among the persons listed as stockholders was Robert A. Linberg. Linberg was elected a director of the corporation at the meeting. A contract was signed on the same day, June 29, 1945, by which the petitioners agreed to sell 420 shares of common stock to Linberg at $175 per share. The stock, except for one share in Linberg's name and the qualifying shares, was to remain in the names of the petitioners until paid for. During this period the O'Brions' right to vote the stock continued. Any dividends paid were to be credited upon the principal of the note, hereinafter referred to. Under the agreement Linberg was to manage the corporation. The *30 contract also provided the O'Brions with several alternative options to protect their security interest in the 420 shares. These options arose in the event Linberg failed to manage the business successfully or if the O'Brions thought the value of the stock they held as collateral was depreciating. Linberg, under the terms of the agreement, was to make payment of $73,500, evidenced by a 5 per cent demand note. The contract and note were dated as of July 2, 1945. Clarence O'Brion remained as president and treasurer of Eastern Tractor until the shares were paid for in full, which occurred in July, 1949. On June 29, 1945, Clarence O'Brion transferred to the corporation for $14,000, 80 of the 106 shares he had received as a stock dividend in 1944. The shares were cancelled by the corporation. The bookkeeping entry recorded on Eastern Tractor's books was as follows: Debit
Credit
Capital Stock
$8,000
Surplus
6,000
C. R. O'Brion, a/c Pay
$14,000
The petitioners, in their 1945 joint return, listed $8,000 as the cost or other basis of the 80 shares, and they reported a long-term capital gain of $3,000. The petitioners' basis in the 500 shares owned by them *31 on June 29, 1945, was $36,450. Earnings and profits of Eastern Tractor, from which dividends might be declared, aggregated more than $14,000 throughout 1945. The respondent held the $14,000 received from the sale of the 80 shares to be a taxable dividend. The acquisition and cancellation of the stock of the Company in 1945 were not made at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend. The purchase of the stock constituted a partial liquidation of the corporation. Opinion VAN FOSSAN, Judge: The only question for decision in this proceeding is whether the distribution and receipt of $14,000 as the purchase price of 80 shares of stock was a distribution under section 115 (c) of the Internal Revenue Code or whether the distribution was taxable under section 115 (g), I.R.C. The issue is one of fact for which there is no single test universally applicable. William H. Grimditch, 37 B.T.A. 402. Among the important elements are: The presence or absence of a real business purpose, the motives of the corporation at the time of the distribution, the size of the corporate *32 surplus, the past dividend policy, and the presence of any special circumstances relating to the distribution. Joseph W. Imler, 11 T.C. 836. No useful purpose would be served by repeating here the several facts which lead us to make the ultimate finding of fact appearing above. This ultimate fact is dispositive of the case. We may note in passing, however, that petitioner has proved conclusively that the need for cash capital had declined by reason of the cancellation of the Caterpillar franchise. A new situation was in prospect when the corporation took on the Allis-Chalmers line. In the premises, the corporation acted prudently and with a real business purpose in redeeming a part of its capital stock. The redemption of the 80 shares of stock being so conceived and so carried out, section 115 (g) is not applicable. The distribution in question was a distribution in partial liquidation and was not essentially equivalent to a taxable dividend. The parties have stipulated that the correct basis for the 500 shares of stock owned by petitioner on June 29, 1945, was $36,450, or $72.90 per share. These figures will be employed in the computation consequent hereon. Decision *33 will be entered under Rule 50.